RECEIVED

JUN 19 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| ELAINE C. BELLON<br>EDITH MILLER CART<br>HILLARY CART MEMORIAL TRUST<br>ANITA CART REED<br>HUGH CART | CIVIL ACTION NO. 07-0037<br><br>JUDGE DOHERTY<br><br>MAGISTRATE JUDGE METHVIN |

VERSUS

CONOCO PHILLIPS CO.
ASCO ENVIRONMENTAL SERV., INC.
TETRA TECH, INC.
JOHN HARTMAN
MARVIN FONTENOT
ALBERTO MAXWELL

### RULING ON MOTION TO REMAND
*(Rec. Doc. 21)*

Before the court is the motion for remand filed by plaintiffs Elaine C. Bellon, Edith Miller Cart, Hugh Cart, Hillary Cart Memorial Trust, and Anita Cart Reed ("plaintiffs") on February 5, 2007.[1] The motion is opposed by defendant ConocoPhillips Company ("Conoco").[2] For the following reasons, the motion is **GRANTED**.

*Factual Background*

Plaintiffs filed the instant lawsuit in Acadia Parish seeking to recover damages from defendants arising from an oil pipeline leak under rural property they own near Tepetate, Louisiana. The property in question was leased to various companies for pipeline rights-of-way, including one to defendant Conoco. On or about June 16, 2000, Conoco discovered that a

---

[1] Rec. Doc. 21.

[2] Rec. Doc. 25.

pipeline transporting light crude oil had leaked approximately 3,000 barrels of light crude oil in or near plaintiffs' property.

Conoco alleges that for several months following the leak, its officials met with plaintiffs Elaine C. Bellon and Anita C. Reed, sisters who each owned a one-quarter interest in the property, to discuss the actions that Conoco and the Louisiana Department of Environmental Quality were taking to clean up the leak. In response to the leak, Conoco retained L&L Environmental Services, Inc., now Asco Environmental Services, Inc., to conduct an emergency response. Conoco also retained Maxim Technologies, Inc., now known as Tetra Tech, Inc., to conduct monitoring of the site. It is undisputed that while the investigation and clean-up were ongoing, on August 22, 2000, Elaine Bellon and Anita Cart Reed executed a receipt and release agreement wherein plaintiffs acknowledged their receipt of $10,000 "in full settlement and discharge of all claims growing out of [the] property damage sustained" as a result of the June 15, 2000 oil leak.

Plaintiffs contend that after the release was executed, they learned that the extent of the damage caused by the leak was greater than they had originally been told by Conoco. Specifically, they contend that SECOR International Inc. ("Secor") sampled groundwater near the site of the leak and discovered elevated levels of certain hydrocarbons, including benzene, toluene, and TPH. Plaintiffs contend that these substances have caused ongoing and continuous hidden surface and subsurface pollution, toxic and hazardous contaminant migration, and other unspecified damages to plaintiffs' properties. Plaintiffs claim that at the time they signed the receipt and release, Conoco did not adequately inform them of the damages for which they were being compensated, and that, consequently, plaintiffs could not have known the value of the

rights they were releasing. Plaintiffs allege that Conoco knew or should have known that the damages incurred and the cost of the cleanup would far exceed the amount paid in the release. Plaintiffs also allege that, pursuant to the terms of the release, Conoco had one year to clean up the leak, and that four years later, it still has not completed the task.

Plaintiffs filed their petition in state court in Acadia Parish on February 10, 2005. In it, they named Conoco, Asco, and Tetra Tech as defendants, as well as John Hartman, Division Manager of Conoco, Marvin Fontenot, Area Supervisor of Conoco, and Alberto Maxwell, formerly of the Environmental Division of Conoco. The individually-named defendants are all citizens of the State of Louisiana, as are the individual plaintiffs. Plaintiffs allege that defendants are solidarily liable for negligence in allowing the contaminated material to affect their property. Plaintiffs specifically state that they are making no claims under federal law or under the Louisiana Conservation Act or the Louisiana Environmental Quality Act.

Defendants Conoco and Tetra Tech Inc. removed the instant case to this court on January 8, 2007.[3] On February 5, 2007, plaintiffs filed the instant motion to remand.

### *Analysis*

Plaintiffs contend that removal in this case was untimely, because the case was not removed within thirty days of the filing of the initial pleading, nor was it removed within thirty days after receipt of an amended pleading, motion, order or other paper showing that the case had become removable. Plaintiffs filed their petition in state court in Acadia Parish on February 10,

---

[3] Rec. Doc. 6.

4

2005. Conoco and Tetra Tech Inc. did not remove the case to this court until January 8, 2007, almost two years after the filing of the original petition.[4]

Section 1446(b) of Title 28 governs removals to federal court and sets forth two thirty-day removal periods, as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

See also Tedford v. Warner-Lambert Co., 327 F.3d 423, 425 (5th Cir. 2003).

Conoco responds that its removal was timely and that plaintiffs fraudulently joined John Hartman, Marvin Fontenot, and Alberto Maxwell for the purpose of circumventing federal jurisdiction, as their presence in the lawsuit destroys complete diversity.

I. **Timeliness of Motion to Remand**

Conoco argues that the first thirty-day time period to remove the case – that is, within thirty days of receipt of the petition – does not apply in the instant case, because the case was not removable at the time the lawsuit was initially filed, inasmuch as there was not complete diversity of citizenship among the parties. Conoco argues that it has complied with the second thirty-day period, that is, Conoco filed its motion to remand within thirty days of it becoming

---

[4] Rec. Doc. 6.

5

"evident that the plaintiffs had no real intention of pursuing any claims against the individual defendants." Although Conoco fails to specify a date for this occurrence, in its Notice of Removal, Conoco appears to suggest that the filing of plaintiffs' request for a trial date in state court was the action that signaled to Conoco that plaintiffs did not intend to pursue their claims against the non-diverse defendants:

> Rather than assume fraudulent joinder from the outset, the defendants have allowed the plaintiffs every reasonable opportunity to serve the individual defendants and pursue a claim against them. However, instead of pursuing any claim against the individual defendants, the plaintiffs requested a trial date in the case in order to pursue its claims only against the diverse defendants. Instead of serving and pursuing its claims against any non-diverse defendants, the plaintiffs obviously intend to dismiss the individual defendants on the eve of trial, because they cannot proceed to trial otherwise. All of this establishes beyond dispute that the plaintiffs have no intention of pursuing – or stating – any claims against the individual non-diverse defendants.

Thus, Conoco states that it attempted to give the plaintiffs time to develop their case against the individual defendants, and that it wasn't until the plaintiffs filed their notice of trial in state court requesting a trial date that Conoco realized that plaintiffs were not going to purse claims against the individual defendants at all.

There are two problems with Conoco's argument. First, the undersigned has been unable to find any jurisprudence supporting an argument that a defendant has an unlimited period of time in which to remove a case so long as the defendant's reasons for doing so are altruistic. Giving a plaintiff "every reasonable opportunity to serve the individual defendants and pursue a claim against them" does not, under the statute or the jurisprudence, absolve a party from the requirement of timely filing a motion to remand.

Second, even if Conoco is correct that the case was not removable until plaintiffs filed their request for a trial date in state court, Conoco still removed the case in an untimely manner.

6

The record shows that plaintiffs requested a trial date in state court on May 23, 2006. Conoco did not remove this case to this court until January 8, 2007, more than seven months later. Section 1441(b) clearly states that, in a case in which removal was not possible immediately following the filing of the initial petition, the defendant may remove "*within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . .*" Thus, Conoco's removal was untimely under the second paragraph of Section 1446(b).

Considering the foregoing, the undersigned concludes that Conoco's motion to remand was untimely.

## II. Fraudulent Joinder and Forum Manipulation

Conoco argues that the plaintiff's motion to remand should be denied because the plaintiffs fraudulently joined the non-diverse defendants and also engaged in forum manipulation.

### *Improper/Fraudulent Joinder*

The Fifth Circuit's most recent rulings on the issue of fraudulent joinder and removal of cases is set forth in Smallwood v. Illinois Central Railroad Company, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (*en banc*), in which the court resolved certain inconsistencies within its prior jurisprudence concerning the "improper joinder" doctrine (now the preferred nomenclature rather than "fraudulent joinder") and clarified the pertinent standard of review. According to the court in Smallwood,

> The starting point for analyzing claims of improper joinder must be the statutes authorizing removal to federal court of cases filed in state court. . . . To remove a

7

case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. §1332 are satisfied. Relatedly, a district court is prohibited by statute from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been *improperly* or *collusively* joined to manufacture federal diversity jurisdiction.

385 F.3d at 572.

Where the face of the complaint demonstrates that complete diversity does not exist, the removing defendant "bears a heavy burden of proving that the joinder of the in-state party was improper." Id. at 574. "The doctrine of improper joinder entitles a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.' Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, *the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case.*" Id. at 573 (emphasis added). Given this focus, the Fifth Circuit has recognized two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Id.

In the instant case, defendants do not allege fraud in the pleading of jurisdictional facts – that is, a fraudulent allegation that one party is a citizen of Louisiana when that fact is demonstrably false – therefore, the existence of jurisdiction will turn on whether Conoco can establish that the plaintiffs *cannot* establish a cause of action against the non-diverse individual defendants. According to the court in Smallwood, "[t]he test for fraudulent joinder is whether the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against an in-state defendant, which stated differently means that there is *no reasonable basis* for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. To determine this, the court may conduct a Rule 12(b)(6)-type analysis, looking initially at the

8

allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." Id. "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. . . . We emphasize that any piercing of the pleadings should not entail substantial hearings. . . . Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."

Id. at 573-74.

Both sides agree that the Louisiana Supreme Court's decision in Canter v. Koehring Co., 283 So.2d 716 (La. 1973) sets forth the current state of Louisiana law that expressly holds that an employee can be individually liable to a third person damaged solely by reason of the individual's breach of an employment-imposed duty.[5] Conoco contends that the plaintiffs'

---

[5] In Canter, the court outlined the following criteria for imposing individual liability on an employee:

> 1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
>
> 2. This duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
> 4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some

9

petition contains no allegations against the non-diverse defendants that satisfies the requirements of Louisiana law, inasmuch as the petition fails to describe any conduct on the part of the non-diverse defendants – good or bad – that exposes them to liability. Plaintiffs refute this contention, arguing that at least two of the non-diverse plaintiffs – John Hartman and Marvin Fontenot – had direct responsibility for the pipeline and the leak in question and failed to take actions that would have alleviated the damages caused to the plaintiffs.

Plaintiffs contend that they conducted discovery with respect to Mr. Hartman and Mr. Fontenot. In the deposition of Lon Langlois, a Conoco employee, plaintiffs allege that they learned that Hartman, the Division Manager of ConocoPhillips Transportation, was one of two Conoco employees with the most knowledge concerning the cause and origin of the pipeline leak. Plaintiffs allege that Hartman was the director of transportation for the area in which the pipeline was located, that he managed and/or supervised the pipeline at issue, and that it was Hartman's responsibility to classify the severity of the spill. Plaintiffs also allege that defendant Marvin Fontenot, Area Supervisor of ConocoPhillips Transportation, was a pipeline operator with the responsibility of preparing the post-incident review report, as well as the grading system, and notifying landowners of the extent of the damage. Based on the foregoing, plaintiffs do not admit that they did not intend to proceed against the individual defendants at trial, and they deny that the non-diverse defendants were fraudulently joined.

---

        responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

283 So.2d at 721.

10

Considering that Louisiana law recognizes that employees of companies can be held individually liable for their own negligence when that negligence damages another, and that plaintiffs allege that Messrs. Hartman and Fontenot's negligence directly caused their damages, the undersigned concludes that Conoco fails to sustain its burden of demonstrating that there is no possibility of recovery against Mr. Hartman or Mr. Fontenot. Because of this, the undersigned concludes that Conoco fails to sustain its burden of establishing that these defendants have been improperly joined. Therefore, the presence of Messrs. Hartman and Fontenot in the instant litigation destroys complete diversity, and this case must be remanded.

*Forum Manipulation*

Conoco argues that plaintiffs engaged in forum manipulation by failing to serve the non-diverse plaintiffs, which Conoco argues was an impediment to its removing the case, because Conoco was unsure whether it needed to obtain the consent of these non-diverse defendants in order to remove. This argument is unpersuasive. In the notice of removal, Conoco properly avers that the consent of non-diverse defendants is not necessary when they have been improperly joined. Jernigan v. Ashland Oil Co., Inc., 989 F.2d 812, 815 (5th Cir. 1983) (consent of fraudulently joined parties is not required). Thus, Conoco never needed the consent of the non-diverse defendants in order to remove, and its argument that "if the removing defendants had immediately removed this case, the plaintiffs would have contested the removal on the ground that the defendants had failed to comply with the requirement that all defendants consent to removal" carries little weight. For the foregoing reasons, the undersigned concludes that Conoco fails to demonstrate how plaintiffs engaged in forum manipulation.

11

## *Conclusion*

Considering the foregoing, the undersigned concludes that Conoco's removal of the instant case was untimely and that Conoco fails to demonstrate that the plaintiffs engaged in either improper joinder or forum manipulation. Therefore, plaintiffs' motion to remand is **GRANTED,** and this case is remanded to state court in Acadia Parish.

Signed at Lafayette, Louisiana on June 19, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(318) 593-5140    FAX 593-5155

COPY SENT:
DATE: 6/19/07
BY: CW
TO: mem